```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------
MICHAEL ISAACS,

                Plaintiff,        13 Civ. 0548 (JGK)

     - against -               OPINION AND ORDER

OCE BUSINESS SERVICES, INC.,

                Defendant.
--------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Michael Isaacs, brings this action against the defendant, Océ Business Services, Inc. ("OBS"), under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq. The plaintiff claims he is entitled to unpaid overtime compensation for work allegedly performed in excess of forty hours per week. OBS now moves, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., to dismiss or stay this action and to compel arbitration of the plaintiff's claims. For the reasons explained below, the motion is granted and the complaint is dismissed.

I.

    The role of federal courts, in ruling on a petition to compel arbitration under the FAA, is "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate

exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate." Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted).  It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); Shaw Group, 322 F.3d at 120; see also Stemcor USA, Inc. v. Trident Steel Corp., 471 F. Supp. 2d 362, 365-66 (S.D.N.Y. 2006).  To determine whether a party has agreed to submit certain issues to arbitration, courts "should apply ordinary state-law principles that govern the formation of contracts." T.Co Metals, LLC. v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d. Cir. 2010) (internal quotation marks and citation omitted).  In applying state law principles, however the FAA will preempt state law that "treats arbitration agreements differently from any other contracts." Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012) (quoting Chelsea Square Textiles, Inc. v. Bombay Dying & Mfg. Co., 189 F.3d 289, 295-96 (2d Cir. 1999)).[1]

---

[1] A court, rather than an arbitrator, should determine the scope of an arbitration agreement, unless there is "clear and unmistakable evidence" from the arbitration agreement, as construed by relevant state law, that the parties intended the question of arbitrability to be decided by the arbitrator. Bell v. Cendant Corp., 293 F.3d 563, 566, (2d Cir. 2002) (emphasis in

II.

A.

The following facts are undisputed, unless otherwise noted. OBS is a service business that sells document-related services to the public. (Compl. ¶ 7.) On January 16, 2004, the plaintiff began employment at OBS as an Enterprise Print Solutions Specialist. (Decl. of Rory G. Schnurr in Supp. of Def's Mot. to Compel Arbitration ("Schnurr Decl.") ¶ 3.) As a condition of his employment, OBS required the plaintiff to sign an arbitration agreement, entitled "Dispute Resolution Policy" ("the Policy"), agreeing to submit certain claims to arbitration. (Schnurr. Decl. ¶ 6.) The plaintiff executed the policy on January 16, 2004. (Schnurr Decl. Ex. A at 3.)

The Policy provides that OBS and the covered employee have the right to submit to arbitration "any controversies, claims or disputes . . . arising out of or relating to any employment relationship including . . . statutory claims for wages or other compensation . . . ." (Schnurr Decl. Ex. A ¶ 2.a.) The Policy also provides that any claims arising under the Policy must be submitted to the American Arbitration Association ("AAA") "within one (1) year from the date when the claim arose."

---

original) (internal citations and quotation marks omitted). This case does not concern the scope of an arbitration agreement but the preceding question of whether the parties ever entered into a binding arbitration agreement.

3

(Schnurr Decl. Ex. A ¶ 2.c.)  The Policy additionally provides that the party filing a claim with AAA is responsible for paying the filing fee for the arbitration.  (Schnurr. Decl. Ex. A ¶ 5.)  The Policy also contains a choice of law provision, which provides that "th[e] policy shall be construed and governed according to the laws of the State of New York without reference to the principles of the conflict of laws thereof."  (Schnurr Decl. Ex. A ¶ 10.)

In or around January 2011, OBS amended its Employee Handbook and revised certain parts of the Policy ("the Revised Policy").  The Revised Policy, which is contained in the Employee Handbook, differs from the Policy in three ways, each of which is more favorable to employees.  First, the Revised Policy provides OBS employees with a choice to file claims arising under the Policy with either AAA or the Judicial Arbitration and Mediation Services ("JAMS"), rather than exclusively with AAA.  (Schnurr Decl. Ex. B ¶ 1.(c)(i).)  Second, the Revised Policy allows for claims arising under the Policy to be brought "within the time set forth by the appropriate statute of limitations," rather than the one year timeframe in the original Policy.  (Schnurr Decl. Ex. B ¶ 1.(c)(ii).)  Third, the Revised Policy provides that "[t]he associated fees for arbitration and fees for the Arbitrator shall be paid solely by OBS," rather than by the

4

party filing for arbitration as was required under the original Policy.  (Schnurr Decl. Ex. B ¶ 5.)

On or around January 31, 2011, OBS forwarded the Revised Policy, contained in the updated Employee Handbook, via email to all OBS employees.  (Schnurr Decl. Ex. D.)  The email provides, in relevant part, that the "Employee Handbook sets forth important information regarding policies and procedures that explain the terms and conditions of your continued employment with [OBS].  All employees are responsible for reading and abiding by these policies, therefore please take an opportunity to read the entire Handbook."  (Schnurr Decl. Ex. D.)

The introduction to the Employee Handbook provides that neither the Handbook nor any other OBS Guidelines Policies or Practices "**CREATES AN EMPLOYMENT CONTRACT OR CONFERS ANY CONTRACTUAL RIGHTS WHATSOEVER.**"  (Decl. of James R. Flanagan, Esq. in Opp'n to the Def's Mot. to Compel Arbitration ("Flanagan Decl.") ¶ 10.)  However, the Dispute Resolution Policy containing the arbitration provisions provides: "OBS agrees to be bound by the terms and conditions of [the] Policy, including any changes made to it, to the same degree and extent as its employees."  (Schnurr Decl. Ex. B ¶ 1.)

OBS employed the plaintiff from the date he signed the original Policy until April 19, 2012, when OBS terminated the plaintiff's employment.  (Schnurr Decl. ¶¶ 3,5.)  During the

5

course of his employment at OBS, the plaintiff had an annual salary of approximately $81,000 per year, and he received bonuses/ commission of approximately $60,000 per year.  (Compl. ¶ 15.)  The plaintiff alleges that while he was employed by OBS, he often worked approximately 80 hours or more in a workweek, and his work at OBS did not meet the definition of exempt work under the FLSA or NYLL.  (See Compl. ¶ 24-25.)  The plaintiff claims that because he was misclassified as an exempt employee, OBS denied him significant overtime wages to which he was entitled.

On January 24, 2013, the plaintiff filed the current Complaint against OBS for overtime compensation.  On March 13, 2013, the defendant filed a motion to compel arbitration and dismiss the Complaint, or in the alternative, to stay the Complaint pending an arbitration decision.

B.

There is no dispute in this case that the plaintiff's claims under the FLSA and the NYLL are included within the scope of the original Policy and that all of the claims are arbitrable.  (Flanagan Decl. ¶ 22.)  The sole issue before the Court is whether there is a valid and enforceable agreement to arbitrate between the plaintiff and OBS.  The plaintiff asserts that the original Policy is unenforceable and that the Revised

6

Policy did not create a valid and enforceable agreement to arbitrate.  The defendant argues that the plaintiff is still bound by the original Policy he signed in 2004, and that the Revised Policy is an independent basis to compel arbitration.  The plaintiff is bound to arbitrate his claims against OBS because the Policy signed by the plaintiff in 2004 is still valid and enforceable, and OBS is also correct that the Revised Policy is also binding.

    The question of whether there is a valid agreement to arbitrate between parties is generally a question of state law.  See Schnabel, 697 F.3d at 119.  The Policy provided that New York law governed the Policy and the parties agree that the Court should apply New York law.

    Under New York law, a person "who signs or accepts a written contract is conclusively presumed to know its contents and assent to them."  Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation marks and citation omitted).  The plaintiff in this case does not dispute that he signed, dated, and spelled out his name on the Policy as a condition of his employment in 2004.  Therefore, he is bound by the Policy unless he can show special grounds, such as fraud, duress or coercion, which would justify the revocation or non-enforcement of contract.  See 9 U.S.C. § 2; see also Gilmer v.

Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir. 1987).

The plaintiff's memorandum of law in opposition to the defendant's motion to compel arbitration cites to cases invalidating arbitration agreements on grounds of unconscionability. However, there is no reasonable argument in this case that the Policy is unconscionable. Generally, to prevail on an unconscionability claim under New York law, a plaintiff must show that an agreement is both substantively and procedurally unconscionable at the time it is entered into. See Lawrence v. Miller, 901 N.E.2d 1268, 1270 (N.Y. 2008). This requires some showing of "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." King v. Fox, 851 N.E.2d 1184, 1191 (N.Y. 2006). The arbitration agreement in this case is not unconscionable.

The Policy is not substantively unconscionable. An agreement is substantively unconscionable if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract. Lawrence, 901 N.E.2d at 1271. When both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears

any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer. See e.g., Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999); Martin v. SCI Mgmt., 296 F. Supp. 2d 462, 468 (S.D.N.Y. 2003); Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003).

The terms of the arbitration agreement in this case are not unreasonably favorable to OBS.  The Policy provides that either the employee or OBS has the right to arbitrate any claims covered by the Policy.  The Policy further provides that "[t]he arbitration of claims as described [by the Policy] means that you and [the company] are giving up your rights to bring such claims to court for trial and determination."  (Schnurr Decl. Ex. A. ¶ 4.)  Therefore, by its own terms, the Policy applies equally to both OBS and its employees.  Moreover, all filing procedures, rules regarding pre-hearing discovery, and confidentiality requirements are applicable to both employees and OBS.  (Schnurr Decl. Ex. A ¶¶ 6-8.)  Furthermore, because OBS retains the responsibility to pay any fees for the arbitrator under the Policy, there is no unreasonable economic barrier to the plaintiff's assertion of claims created by the terms of the Policy. (Schnurr Decl. Ex. A ¶ 5, Ex. B ¶ 5.); see also Martin, 296 F. Supp. 2d at 468.  Therefore, the terms of

the Policy are not one-sided and the policy is not substantively unconscionable.

Furthermore, the Policy is not procedurally unconscionable. An agreement is procedurally unconscionable when, among other considerations, the party seeking to enforce the agreement used "deception" or "high pressure tactics" in the formation of the agreement or there was a "disparity in bargaining power" between the parties.  Dallas Aerospace, Inc. v. CIA Air Corp., 352 F.3d 775, 787 (2d Cir. 2003) (quoting Gillman v. Chase Manhattan Bank, 534 N.E.2d 824, 828 (N.Y. 1988)).

However, it is well accepted under New York law that it is not unconscionable to be bound by an arbitration agreement in the course of securing employment.  See e.g., Ragone v. Atl. Video at the Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010); Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 302 (S.D.N.Y. 2010), aff'd, 408 F. App'x 480 (2d Cir. 2011) (Summary Order).  Moreover, the fact that there is inequality in bargaining power between an employer and a potential employee is not a sufficient reason to hold that arbitration agreements are not enforceable in the employment context.  See Ragone, 595 F.3d at 121.  Therefore, the fact that OBS unilaterally drafted the Policy and required the plaintiff to sign the Policy as a condition of his employment does not in itself render the Policy

10

unconscionable.  See Sablosky v. Edward S. Gordon, Co., 535 N.E.2d 643, 647 (N.Y. 1989).

The only New York case cited by the plaintiff to support his argument is Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377 (S.D.N.Y. 2002).  However, that case is plainly distinguishable.  In Brennan, an arbitration agreement signed during the course of the plaintiff's employment was invalidated as unconscionable where the plaintiff was given 15 minutes to review a newly instituted "sixteen-page single-spaced" arbitration agreement and told she would be ineligible for promotions if she did not sign it.  Id. at 383.  Moreover, the terms of the arbitration agreement in Brennan allowed the company to modify it at any time and denied the plaintiff the right to proceed on an already pending sexual harassment claim against the company.  Id. at 384.  In contrast, the Policy in this case was given to the plaintiff as a condition of his employment at the outset and did not require the plaintiff to discontinue already pending litigation against OBS.  The Policy was only two pages long and legibly printed.  Furthermore, the terms of the Policy make no mention of any unilateral right of OBS to modify the agreement.  Therefore, Brennan is inapplicable to the facts of this case.

The plaintiff also cites two cases from outside of the Second Circuit that are not binding and also distinguishable.

See Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938-38 (4th Cir. 1999) (invalidating an arbitration clause that provided more beneficial procedural rules for the company than for its employees); Perez v. Hospitality Ventures-Denver, LLC., 245 F. Supp. 2d 117, 1173-74 (D. Colo. 2003) (invalidating an arbitration clause found solely in an employee handbook that provided the employer with a unilateral right to modify the terms at any time without notice).  There is nothing about the substance or the procedure of the Policy signed in 2004 that renders it unconscionable and therefore unenforceable.  The plaintiff accepted his employment at OBS with the full knowledge of the arbitration provision and he is bound by his acceptance.

  Moreover, the plaintiff is also bound to arbitrate by the Revised Policy included in the Employee Handbook.  Under New York law, employee handbook revisions are binding when an employee continues to work after receiving notice of the revisions.  See Brown v. St. Paul Traveler's Co., 331 F. App'x 68, 69-70 (2d Cir. 2009) (Summary Order); Manigault v. Macy's East, LLC., 318 F. App'x 6, *7 (2d Cir. 2009) (Summary Order) (holding that employee consented to and was bound by revised terms of employment, including a newly instituted arbitration policy, when she continued to work after receiving notice of the modification); Dixon v. NBC Universal Media, LLC, No. 12 Civ. 7646, 2013 WL 2355521, *7 (S.D.N.Y. May 28, 2013);  Raniere v.

12

Citigroup Inc., 827 F. Supp. 2d 294, 306 (S.D.N.Y. 2011).  Here, although the plaintiff did not sign the Revised Policy included in the Employee Handbook, he continued to work after receiving notice of the modifications.  Therefore the plaintiff is bound by the Revised Policy. See Brown, 331 F. App'x at 69; Manigault, 318 F. App'x at *8; Dixon, 2013 WL 2355521 at *7.

The plaintiff argues that the Revised Policy is not a binding agreement because of a lack of mutual obligations in the Employee Handbook as a whole. The plaintiff additionally argues that the language in the introductory section to the Handbook precludes the enforcement of the Revised Policy because it explicitly provides that the Handbook does not create an employment contract or confer any contractual rights upon OBS's employees.

An arbitration agreement included in an employee handbook with language "providing that the handbook does not constitute a . . . contract of employment or that the arbitration policy may be amended" is enforceable when the language of the arbitration agreement is "distinct and mandatory" and when the employee is advised of the policy and that "compliance with it [is] a condition of employment."  Brown v. St. Paul Travelers Co., 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008), aff'd, 331 F. App'x 68 (2d Cir. 2009).

13

It is undisputed in this case that the plaintiff was advised of the Revised Policy and informed that his continued employment was conditioned upon his acceptance of it. (Schnurr Decl. Ex. D.) Moreover, the Revised Policy is clearly both distinct and mandatory. The Revised Policy is found under a separate and bolded "Dispute Resolution Policy" heading and is not a hidden clause intended to bind employees to arbitration without adequate notice. See Raniere, 827 F. Supp. 2d at 307-08; Cf. Sherry v. Sisters of Charity Med. Ctr., No. 98-CV-6151, 1999 WL 287738, *5 (E.D.N.Y. May 4, 1999.) Moreover, the terms of the Revised Policy are explicitly binding on both the plaintiff and OBS. This contradicts the disclaimer in the Employee Handbook's introduction and is sufficient to establish that the Revised Policy is distinguishable from any non-binding or non-mutual sections of the handbook. The terms of the Revised Policy additionally reference its 1995 effective date, providing sufficient notice to employees that the Policy stands apart from the 2011 Employee Handbook. Furthermore, all of the changes made to the original Policy are not only reasonable but more favorable to the plaintiff. The Revised Policy provides employees with a choice of arbitration forums, it allows employees to bring claims within the applicable statute of limitations rather than a one-year timeframe, and it eliminates the requirement to pay a filing fee should an employee choose to

bring an arbitration proceeding against OBS.  (Schnurr Decl. Ex. B.)

Unlike the cases cited by the plaintiff, where the arbitration clauses themselves contained a unilateral right of modification, see Perez, 245 F. Supp. 2d at 1174-75; Brennan, 198 F. Supp. 2d at 384, or where there was no arbitration agreement aside from a clause in the employee handbook, see Trumbell v. Century Marketing Corp., 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998), the revised Policy in this case is distinct from the Employee Handbook and the terms of the Revised Policy itself provide no unilateral right of modification.  The plaintiff was advised of the Policy's existence and that compliance with the Policy was a condition of employment in 2004 and again in 2011.  Upon receipt of the revised procedures the plaintiff made the choice to continue his employment and is bound to arbitrate his claims under both the original Policy and the Revised Policy.

Because all of the plaintiff's claims are subject to arbitration, the Complaint is dismissed.  Under 9 U.S.C. § 3, a district court must stay the judicial proceedings upon "application of one of the parties" where the asserted claims are "referable to arbitration."  9 U.S.C. § 3.  However, when all of the claims in an action are arbitrable a Court may dismiss the action rather than stay the proceedings.  See

Ramasamy v. Essar Global LTD., 825 F. Supp. 2d 466, 471 (S.D.N.Y. 2011); Arrigo, 704 F. Supp. 2d at 305; Martin, 296 F. Supp. 2d at 467-68.  All of the plaintiff's claims are arbitrable and are within the scope of the Policy and the Revised Policy.  (Flanagan Decl. ¶ 22.)  Therefore, the Complaint is dismissed without prejudice.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the reasons explained above, the defendant's motion to compel arbitration and dismiss the complaint is **granted**.  The plaintiff's Complaint is **dismissed without prejudice** and the parties are directed to proceed to arbitration.  **The Clerk is directed to enter judgment and to close this case**.

**SO ORDERED.**

**Dated:    New York, New York
           September __, 2013**                _____/s/_____
                                                 **John G.  Koeltl
                                        United States District Judge**

16